IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONITA L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23 C 13902 |
| v. ) | |
| ) | Magistrate Judge |
| MARTIN J. O'MALLEY, ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Bonita L.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No.25] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

# BACKGROUND

## I. PROCEDURAL HISTORY

On October 23, 2019, Plaintiff filed claims for DIB and SSI, alleging disability since August 1, 2018. Plaintiff's claims were denied throughout the administrative stages, after which she timely appealed to this Court. The parties then jointly agreed to remand the case. An online video remand hearing before an Administrative Law Judge ("ALJ") was held on May 8, 2023, and all participants attended the hearing remotely. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. On May 26, 2023, the ALJ issued a partially favorable decision finding Plaintiff disabled under the Social Security Act as of July 1, 2022, but not before that time. Plaintiff now appeals that decision.

## II. ALJ DECISION

In the ALJ's May 26, 2023 decision, Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 1, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity; fibromyalgia; breast cancer; depression; anxiety; and post-traumatic stress disorder (PTSD). The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that since August 1, 2018 Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: occasional crawling and climbing; frequent crouching and kneeling; and no public interaction. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a dialysis technician. At step five, the ALJ found that prior to July 1, 2022, the date Plaintiff's age category changed, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. However, the ALJ also determined that beginning July 1, 2022, the date Plaintiff's age category changed, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ ultimately determined that Plaintiff was not disabled prior to July 1, 2022, but became disabled on that date.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

3

enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not

4

high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to

5

fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in evaluating Plaintiff's fibromyalgia; (2) the ALJ erred in results oriented decision making regarding mental health; (3) the ALJ erred in evaluating the medical opinions related to Plaintiff's mental health; (4) the ALJ erred in evaluating the medical opinions related to Plaintiff's physical limitations; and (5) the ALJ erred in evaluating Plaintiff's subjective symptoms.

In advancing her first argument, Plaintiff contends that the ALJ's analysis of her fibromyalgia was inadequate. In determining that Plaintiff's fibromyalgia was not as severe as alleged, the ALJ reasoned, *inter alia*, that Plaintiff's "EMG and MRI studies revealed modest findings." (R. 1059.) However, courts have made clear that "EMG and MRI testing . . . are not relevant to the diagnosis or severity of fibromyalgia." *Holloway v. Astrue*, No. CIV. 12-178-CJP, 2012 WL 4815664, at *7

(S.D. Ill. Oct. 10, 2012). Accordingly, the ALJ's reasoning in that regard was faulty. *See Steven H. v. Kijakazi*, No. 21-CV-50257, 2023 WL 2374780, at *6 (N.D. Ill. Jan. 18, 2023) ("[T]he ALJ asserted that . . . the negative EMG showing no nerve damage suggested 'limited severity.' . . . Without any explanation or reference to medical expert opinions or administrative guidance, there is nothing in the record to suggest that a negative EMG result is inconsistent with Dr. Zaidi's opinion regarding the severity of Plaintiff's fibromyalgia symptoms."); *Heuschmidt v. Colvin*, No. 14 C 4377, 2015 WL 7710368, at *4 (N.D. Ill. Nov. 30, 2015) ("The fact that Plaintiff's MRIs and neurological exams were normal does not address the severity of her fibromyalgia or chronic fatigue syndrome.").

Additionally, the ALJ noted that Plaintiff's doctor "advised yoga, tai chi, [and] water exercise" and the ALJ determined that Plaintiff's "conservative treatment course" suggested that Plaintiff could perform light work with certain limitations. That reasoning was faulty, too. *See Marianne T. v. Saul*, No. 19 C 6171, 2021 WL 1088322, at *3 (N.D. Ill. Mar. 22, 2021) ("[T]he ALJ failed to suggest what more aggressive treatment was available for Marianne's fibromyalgia. The ALJ's characterization of Marianne's treatment as conservative therefore misapprehends the medical options available for treating fibromyalgia. Because there is no cure for fibromyalgia, treatment options are constrained to nonnarcotic pain relievers, exercise, and stress-reduction measures.") (citations and internal quotations omitted); *Thorn v. Berryhill*, No. 15 CV 50248, 2017 WL 748596, at *5 (N.D. Ill. Feb. 27, 2017) (ALJ cannot engage in "layperson speculations about what constitutes

7

routine or conservative treatment for a person with fibromyalgia"). Ultimately, many of the reasons the ALJ supplied for discounting Plaintiff's fibromyalgia are fundamentally flawed, and the ALJ's errors in that regard require that this matter be remanded. *See Molly K. v. Saul*, No. 18 C 3415, 2019 WL 3857885, at *8 (N.D. Ill. Aug. 16, 2019).

Plaintiff also argues that the ALJ did not properly evaluate her daily activities in relation to the ALJ's symptom assessment. With respect to an ALJ's assessment of a claimant's alleged symptoms, the ALJ must "explain the 'inconsistencies' between [a claimant's] activities of daily living . . . complaints of pain, and the medical evidence." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *12 (N.D. Ill. Oct. 19, 2020) (citation omitted). *See also Rainey v. Berryhill*, 731 F. App'x 519, 522 (7th Cir. 2018) ("While an ALJ may consider daily activities when assessing the claimant's credibility, the ALJ must also explain how the claimant's activities are inconsistent with medical evidence.") (citations omitted). Put differently, the ALJ must "adequately explain how Plaintiff's ability to perform his daily activities undermined his allegations of disability." *Steven L. v. Saul*, No. 19-CV-6047, 2021 WL 1531603, at *2 (N.D. Ill. Apr. 19, 2021). A level of specificity is required, and the ALJ must explain why a claimant's "daily activities are inconsistent with his specific symptom allegations." *Donte A. R. v. Saul*, No. 19 C 2363, 2020 WL 7241066, at *8 (N.D. Ill. Dec. 9, 2020) (citations omitted).

Here, the ALJ discounted Plaintiff's alleged deficits because she "remained able to care for her disabled adult son, perform some household chores, maintain a

8

driver's license, use email, and work for months in 2019." (R. 1059.) However, the ALJ did not adequately explain how, for instance, Plaintiff's ability to use email and drive contradicts Plaintiff's allegations of disabling pain and mental deficits. *See Charles B.*, 2020 WL 6134986 at *12 ("The ALJ here did not explain how Charles's having custody of his kids, feeding his dog, shopping for groceries, or talking to others daily was inconsistent with his claims of having severe chest pain, swelling and pain in his left leg, and depression."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("Although [the ALJ] briefly described Villano's testimony about her daily activities, he did not, for example, explain whether Villano's activities were consistent or inconsistent with the pain and limitations she claimed."). The inadequacy of the ALJ's symptom analysis is another error that requires that this matter be remanded. *See Steven L.*, 2021 WL 1531603 at *4 ("On remand, the ALJ should more fully analyze Plaintiff's activities of daily living and whether they are in fact inconsistent with his disability claim, taking care to explain how his daily activities truly (or not) equates to the ability to perform work at a level necessary for competitive employment."); *Pearline P. v. Saul*, No. 17 C 8996, 2020 WL 370187, at *8 (N.D. Ill. Jan. 22, 2020) ("On remand, the ALJ should . . . provide a sufficient explanation about how his assessment of Claimant's activities of daily living inform his ultimate decision as to what level of work, if any, Claimant is capable of performing.").

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The

Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that Plaintiff's mental health limitations are properly assessed and all medical opinions of record are properly evaluated.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 20] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No.25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

**DATE:  June 21, 2024**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

10